UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTOINE SMITH, | ) |
|           Plaintiff, | ) Case No. 19-cv-5329 |
| v. | ) Judge Sharon Johnson Coleman |
| WEXFORD HEALTH SOURCES, INC, et al., | ) |
|           Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antoine Smith, by counsel, brings Eighth Amendment deliberate indifference medical care claims against defendant Wexford Health Sources, Inc. ("Wexford"), which provides health care services for inmates incarcerated at Stateville Correctional Center ("Stateville"), and defendant Nurse Dina Page, LPN, a Wexford employee.[1] *See* 42 U.S.C. § 1983. Before the Court are Wexford's and Nurse Page's motions for summary judgment brought under Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants defendants' motions and dismisses Nurse Page and Wexford from this lawsuit.

**Background**

Smith's medical treatment stems from an injury which occurred when he was working in the Stateville kitchen. Specifically, on December 18, 2018, while washing dishes with boiling water, the water splashed up and burned Smith's left forearm. Smith was then rushed to Stateville's healthcare unit where Stateville's medical director initially treated him for second degree burns. Later that same day, Stateville physician Dr. Catalino Bautista treated Smith's left forearm with Silvadene cream and then bandaged it. Dr. Bautista also prescribed Tramadol, an opioid pain medication.

---

[1] Although Smith alleged a deliberate indifference medical claim against "Nurse Crystal," the docket reflects "Nurse Crystal" was never served.

Starting on December 21, 2018, Smith spent two and a half weeks in the Stateville infirmary and was given 24-hour treatment for his burn injury. After he was released from the infirmary, medical staff continually treated Smith's burn, including changing the dressing, applying Silvadene cream, and administering Tramadol and Benadryl. The last time Smith was administered Tramadol for the pain attendant to his second degree burn was on March 24, 2019.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Anderson v. Nations Lending Corp.,* 27 F.4th 1300, 1304 (7th Cir. 2022). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

*Nurse Page*

Smith asserts Nurse Page was deliberately indifferent to his medical needs because she failed to provide his pain medication, Tramadol, between the dates of December 18 and December 21, 2018. "To prevail on an Eighth Amendment claim for inadequate medical care, a prisoner must show that a prison official acted with deliberate indifference to the prisoner's objectively serious medical need." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234-35 (7th Cir. 2021). To meet

2

this standard, Smith must show: (1) he suffered from an objectively serious medical condition, and (2) Nurse Page had subjective knowledge of the substantial risk of harm, yet disregarded the risk. *See Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 486 (7th Cir. 2022); *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021). As with all constitutional claims, for "a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).

Stateville nurses are responsible for administering medications prescribed by Stateville physicians, but the nurse who charts the prescription is not necessarily the nurse who administers the medication to the patient. Instead, when a medical provider prescribes medication to an inmate, it can be administered immediately or scheduled for medication pass ("med pass"), which is when the nursing staff administers the medication to the inmate in his cell. After the nurse gives the inmate his medication, she documents it on the inmate's medication administration record ("MAR") and then she initials and signs the MAR. Nurses who administer medication on "med pass" are scheduled for certain days and times. As such, the nurses who administer medications to inmates can vary from day to day, shift to shift. To ensure medications are properly administered, a nurse supervisor conducts a chart audit on a daily basis.

With this in mind and viewing the facts in Smith's favor, he does not provide any evidence that Nurse Page was assigned to administer his Tramadol from December 18 until December 21, 2018. For example, Smith did not provide evidence such as the med pass nursing assignments for the relevant time period. And, at summary judgment, "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" cannot survive summary judgment. *Celotex*, 477 U.S. at 322.

Instead of providing evidence of Nurse Page's personal involvement to create a material

3

dispute for trial, Smith attempts to refute Nurse Page's reliance on his MAR showing she was not personally responsible for administering his Tramadol by arguing that his medical records are barely legible and that he believes his medical records are inaccurate. Nurse Page, however, testified that her initials and signature were not on Smith's MAR except for March 24, 2019. Equally important, Smith does not provide any evidence supporting his assertion that his medical records are inaccurate, but instead merely states he "believes" the records are inaccurate. This belief does not defeat summary judgment. *See, e.g., Jones v. Natesha*, 233 F.Supp.2d 1022, 1028 (N.D. Ill. 2002) (Alesia, J.); *see also Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.").

Meanwhile, Smith's medical records indicate his prescription for Tramadol was administered to him every day from December 18 until he was admitted into the infirmary on December 21, with the exception of the morning of December 20, where it was noted Smith was not in his cell. Nonetheless, Smith and his cellmate Corzelle Cole testified Smith was not administered Tramadol until he went into the infirmary on December 21 raising a triable issue of fact. The Court thus turns to whether the three-day delay in receiving his pain medication supports Smith's deliberate indifference claim.

An inexplicable delay in medical treatment may support a claim of deliberate indifference if the delay results in prolonged and unnecessary pain. *See Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021); *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). "[D]elays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties,* 836 F.3d at 730. To establish that delays in medical treatment amounted to deliberate indifference, a plaintiff must set forth "verifying medical evidence" that the delay, and not his underlying medical condition, caused him harm. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). In other words,

"[t]o show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Smith has not provided any such medical evidence. The Court therefore grants Nurse Page's motion for summary judgment because Smith has failed to raise a triable issue of fact that Nurse Page was deliberately indifferent to his burn injury.

*Wexford Health Sources*

Smith also contends Wexford, a private corporation that has contracted with the State of Illinois to provide essential governmental services, violated his constitutional rights pursuant to *Monell v. Department of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. Smith specifically argues Wexford failed to implement policies to ensure Stateville inmates receive prescribed medications and adequate follow-up care for his burn injury. Smith can demonstrate *Monell* liability by showing the constitutional deprivation was caused by: (1) an express policy; (2) a *de facto* widespread custom or practice; or (3) a decision by a Wexford agent, who had final policymaking authority. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 765 (7th Cir. 2021). Smith must also establish Wexford's inaction was the "moving force" behind his constitutional deprivation (causation) and Wexford was "deliberately indifferent" (culpability) to Smith's constitutional rights. *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021).

Smith focuses on the assertion that he did not receive his pain medication (or dressing changes) from December 18 until December 21, 2018, arguing Wexford's failure to implement proper procedures caused his constitutional deprivation. Because Smith seeks to impose liability on a theory of Wexford's inaction, he must point to evidence of a prior pattern of similar constitutional violations. *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022). "This heightened evidentiary burden helps ensure that 'there is a true municipal policy at issue, not a random event.'" *Id.* (citation

omitted). Inaction can give rise to liability if it reflects "a conscious decision not to take action." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citation omitted).

Wexford first argues because Smith cannot establish he suffered a constitutional injury at the hands of Nurse Page, Smith cannot establish his *Monell* claim. Wexford's argument is misplaced because although "the lack of liability on the part of the subordinate actors means that there is nothing unlawful for which the entity might be liable," that "is not always the case." *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 568 (7th Cir. 2021). To explain, "if institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible." *Id.* (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc)).

Turning to Smith's main argument, he contends Wexford's policy dictates that all nurses are responsible for carrying out all physician prescriptions; therefore, he has been unable to identify any one person, besides Nurse Page, who was personally involved in his constitutional deprivation. He also argues Wexford's policy related to the division of labor and tasks assigned to nurses encourages nurses, who have direct personal knowledge of an inmate's serious medical need, to ignore an inmate's medical needs because someone else would take care of them.

Here, Smith has failed to identify at least one other incident of a similar constitutional violation. *See Taylor,* 26 F.4th at 435. Rather, he relies on non-*Monell* cases for the general proposition that deliberate indifference may occur when a medical professional ignores a request for medical treatment. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015); *Perez v. Fenoglio,* 792 F.3d 768, 779 (7th Cir. 2015); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). These cases do not discuss a *Monell* policy nor are the facts analogous to Smith's allegations, namely, Wexford's lack of a proper policy encourages nurses to ignore inmates' requests for medical treatment. Another reason why Smith has not raised a triable issue of fact as to his *Monell* claim is that he does not

discuss, let alone provide evidence, that Wexford made a conscious decision not to take action. *See Dean*, 18 F.4th at 235; *Glisson*, 849 F.3d at 381.

Smith further maintains that he continues to experience pain and sensitivity in his left forearm and that he believes he needs treatment from an outside specialist to remedy his ongoing symptoms. In response, Wexford presents the testimony of two separate Stateville doctors, who stated there was no medical need for Smith to be referred to an outside specialist—testimony Smith does not address. Moreover, Smith's request to permanently enjoin Wexford related to the future medical care of his burn injury fails because Smith has not established a continuing violation of federal law. *See Kress v. CCA of Tennessee, LLC,* 694 F.3d 890, 894 (7th Cir. 2012) ("[D]elaratory or injunctive relief is only proper if there is a continuing violation of federal law.").

In the end, Smith's *Monell* claim against Wexford fails because "there is no proof of an underlying constitutional violation by any individual Wexford defendant nor any evidence that an institutional policy caused such a violation." *Johnson v. Prentice*, 29 F.4th 895, 905 (7th Cir. 2022). Accordingly, the Court grants Wexford's summary judgment motion.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motions for summary judgment and dismisses Nurse Page and Wexford from this lawsuit [133, 141].

IT IS SO ORDERED.

Date: 6/9/2022

Entered:

SHARON JOHNSON COLEMAN
United States District Judge